**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                          *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SEAN FINLEY,** | : | **Civil Action No.** |
| **8 Aster Court** | : | |
| **Delran, NJ 08075** | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **TEMPLE UNIVERSITY** | : | |
| **1801 N Broad Street** | : | |
| **Philadelphia, PA 19122,** | : | |
| | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Sean Finley (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Temple University (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Family Medical Leave Act ("FMLA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Temple University is a higher education institution with a

location and headquarters at 1801 N Broad Street, Philadelphia, PA 19122.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability and race discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number of 530-2023-03028 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 30, 2023. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. In or around August 2015, Defendant hired Plaintiff as a Roving Engineer.

21. Plaintiff is a Caucasian male who is married to an African American female and has three (3) bi-racial children and one (1) African American stepchild.

22. Throughout his employment with Defendant, Plaintiff was well qualified for his position and performed well.

23. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

24. In or around May 2021, Plaintiff suffered an injury at work which resulted in a Grade 2 hamstring pull.

25. Dr. Ben Mobo, Defendant's Work Injury Doctor, treated Plaintiff and placed him on a 6-7 week Worker's Compensation ("WC") leave.

26. Plaintiff also regularly attended NovaCare Rehabilitation to prepare for his return to work.

27. In or around July 2021, Plaintiff worked with his physical therapist at NovaCare Rehabilitation to begin climbing ladders again in order to return to work the following week.

28. Plaintiff made Dr. Mobo aware of this progress.

29. That same week, Plaintiff visited his rental home property, which he owns, with his son (bi- racial).

30. Plaintiff and his son went to fix an emergency at the property.

31. Upon returning to work in or around mid-July 2021, Defendant called Plaintiff into a scheduled meeting one week later.

32. Frank Zippino, Union Representative, Sean Onuan, Assistant Director of Facilities and the head of the injury review panel attended this meeting with Plaintiff.

33. During this meeting, Onuan and the injury review panel revealed that they thought Plaintiff was working as an employee with another individual while out on WC leave from Defendant.

34. Onuan wrongly assumed that Plaintiff's son was his employee due to his race. Further, the head of the injury review panel presented videos that were taken by an investigator of Plaintiff at his owned rental property.

35. Plaintiff was forced to explain that he was not faking his leave or violating the terms of his leave.

36. Upon information and belief, Onuan was not aware of the fact that Plaintiff was married to an African American woman prior to this incident.

37. Once Plaintiff made it clear that it was his bi-racial son who was with him, Onuan's behavior changed drastically.

38. Prior to this revelation, Onuan did not speak up in the meeting. After the meeting, Onuan approached Plaintiff and claimed that he was lying about his disability and subsequent limping.

39. Plaintiff had to once again defend himself and identify that the limping was evident in the video shown during the meeting.

40. Ultimately, the meeting resulted in Plaintiff's accounts being verified. Plaintiff continued his work duties.

41. However, shortly after the meeting, Plaintiff spoke with Brian Chioffe, Supervisor, who informed him that Onuan spoke to Chioffe after the meeting.

42. Chioffe stated that Onuan told him Plaintiff was "now a target to be fired" and that Onuan was "determined to follow through with this".

43. Chioffe repeated this notion in front of several other coworkers, including Derick Quinn, from that date forward.

44. Between September 2021 and December 2021, Chioffe came to Plaintiff several times with an accusatory issue that was either incorrect, misinformed, and/or fabricated.

45. Chioffe always ended the conversation by emphasizing that Plaintiff was being targeted by Onuan, a target that started in July of 2021.

46. Each time, Plaintiff was forced to disprove the contention made about his work and defend himself.

47. Prior to this, Plaintiff had never been disciplined or questioned about his work in his seven (7) years with Defendant.

48. For example, on January 3, 2022, there was a significant steam leak in Johnson Harwick Mechanical Room at Defendant. Plaintiff informed Chioffe of the safety hazard and that it needed to be addressed immediately.

49. Shortly after, Chioffe and John Zippino, Plumbing Manager, called Plaintiff into a meeting.

50. Chioffe and Zippino proceeded to accuse Plaintiff of a valve related issue that caused the steam leak, however this had occurred while Plaintiff was on winter break a week prior.

Case 2:23-cv-04691-GJP   Document 1   Filed 11/28/23   Page 7 of 20

51. Plaintiff explained that once the steam leak was identified, Plaintiff immediately notified his supervisor of the safety hazard and that he did not feel comfortable going in the mechanical room alone to identify and valve.

52. Chioffe refused to acknowledge that Plaintiff took the proper safety precautions and performed his job duties correctly by reaching out to his supervisor.

53. Instead, they gave Plaintiff a verbal discipline for his work, without identifying any specific areas to improve. This was Plaintiff's first discipline at Defendant.

54. Then, in February of 2022, Johnson Harwick cafeteria experienced a heating issue. This issue falls in the responsibilities of the dorms HVAC employees.

55. Chioffe asked Plaintiff to assist the dorms HVAC mechanics with the issue. In trying to find the problem, it was discovered that the roof air handlers had not been properly preventive maintained (PM'd).

56. Again, Chioffe verbally disciplined Plaintiff for the issue, stating he was not completing his job duties and that he would continue to be disciplined for it.

57. Even after proving that these responsibilities did not fall under his role, Chioffe blamed Plaintiff for the issue.

58. Chioffe made it very clear that Onuan was determined to reprimand Plaintiff for this issue regardless of the facts.

59. Chioffe again threatened that Onuan wanted to terminate Plaintiff.

60. In March of 2022, Plaintiff discovered a significant amount of water in the mechanical room penthouse of the Anneburg Tomlinson building.

61. Plaintiff's investigation of the leak found a small amount of water in the air handler, but not enough to warrant the massive amount that was cleaned up.

7

62. Plaintiff informed Chioffe that he spoke with Pete Gervais, Lead, about the issue.

63. Plaintiff stated he would follow up after lunch to figure out the extent of the issue and what the source might be.

64. Chioffe called Plaintiff into the office the following day. Chioffe issued Plaintiff a written discipline for failing to diagnose the issue correctly.

65. According to Chioffe, the leak was from a leaking steam coil in the air handler.

66. Later, while Plaintiff was on vacation, Quinn, Engineer discovered it was actually a roof vent issue, which would only be evident with melting snow or rain.

67. Jim Rose, Steam Fitter, seconded this as the source of the issue.

68. Plaintiff informed Chioffe of the real issue but Chioffe refused and stated "you are wrong that was not the issue."

69. Chioffe refused to revoke Plaintiff's discipline or listen to his diagnosis of the issue.

70. In May of 2022, Plaintiff was called into the office about driving his car to a parking spot after punching in on the clock.

71. Several occasions prior, Chioffe had told Plaintiff that this was not an issue and Plaintiff was allowed to do this.

72. In addition, several other employees do the same. During the meeting, Plaintiff informed Onuan and Chioffe that he was struggling with sleep issues due to his disability.

73. As a result, Plaintiff often arrived at work at 6:55 am and did not have time to find parking and punch in prior to 7am.

74. Onuan informed Plaintiff he should purchase parking as a remedy. This was not an option for Plaintiff financially.

75. Plaintiff stated that close to half of the other employees were not required to attend the morning meeting.

76. Plaintiff stated that if he could be absolved from that, he would be able to park and clock in prior to 7am at a place close to his assigned building, the Tyler building, as other employees were permitted to.

77. Plaintiff was denied this accommodation and told that he was required to attend the meeting without explanation.

78. A day prior, Chioffe had told Plaintiff that moving his car later was not an issue.

79. In June of 2022, Whitehall's chiller was having several operating issues which could not be rectified.

80. Plaintiff informed Chioffe of these issues by text message. Dave Carson, Chill Plant Operator, and outside contractors had looked at the chiller with no remedy found.

81. Plaintiff adamantly told Chioffe that this was a very serious issue and it needed immediate attention.

82. Chioffe told Plaintiff "you need to figure out Whitehall chiller it is an easy fix that I could figure out by pressing a few buttons".

83. Plaintiff told Chioffe that he believed it was a more pressing issue that required specialized contractors to fix.

84. Plaintiff needed training to figure out this equipment and what was wrong with it, which he did not have.

85. Chioffe repeated "just push buttons and figure it out, If you break it, it will be ok there will be no discipline".

86. A few months later, Whitehall's Chiller completely broke and now a temporary chiller is cooling Whitehall.

87. The result of this equipment breaking was a very serious complaint by all students residing in Whitehall.

88. Chioffe contended that Plaintiff did something wrong in attempting to address the issue but gave no basis in his reasoning.

89. Chioffe routinely brought up these false allegations in front of the department to publicly outcast Plaintiff, cast blame on him and discipline him.

90. In September of 2022, Chioffe and Jerry Bassett, Supervisor, accused Plaintiff of not answering phone calls from dispatch.

91. They also accused Plaintiff of telling another employee, Paul Racine, he was too busy to assist him.

92. Finally, Plaintiff was accused of sleeping on the job. The first two allegations were false and Plaintiff immediately proved them to be wrong.

93. As such, they were removed from the write up. However, Plaintiff informed Chioffe again that he was dealing with a serious health issue due to his disability, which interfered with his sleep.

94. Chioffe suspended Plaintiff for three (3) days as a result of his medical condition.

95. Prior, Chioffe had given Plaintiff permission via text to nap as needed while on the clock.

96. Importantly, Plaintiff only slept on a 16-hour shift, as he was dealing with migraine headaches.

97. The same day Plaintiff was suspended for sleeping, Chioffe had stated to Matthew Prudente, Engineer, "I am aware that you sleep, I see you sleeping all the time, you don't have anything to worry about."

98. Prudente (non-disabled) was not disciplined for sleeping, however Plaintiff (disabled) was suspended.

99. Prudente signed a statement confirming this statement was made thereafter.

100. Due to his debilitating headaches and the fact that Defendant failed to accommodate him, Plaintiff applied for FMLA leave in September 2022.

101. Plaintiff submitted all necessary paperwork to the Human Resources Department at Defendant.

102. Sharon Boyle, Human Resources Director, denied Plaintiff's leave with no explanation.

103. Upon information and belief, Boyle and Onuan are friends.

104. On October 7, 2022, Plaintiff was informed that he would be moved to the chill plant.

105. Two months prior, Plaintiff had been moved from his buildings of Whitehall, Johnson Hardwick, Anneburg, and Messiah to Sac I, Sac II and Weiss.

106. At this time, supervisors told Plaintiff he was moved due to his limited knowledge in chillers.

107. Defendant assured Plaintiff at this time that he would not be moved to different buildings for any reason moving forward.

108. Two months later, upon being informed of his move to the chill plant, Plaintiff attempted to explain to Chioffe and Onuan that this move to the chillers would be detrimental to his health and career.

109. Plaintiff was not trained in chillers, which Defendant previously acknowledged.

110. More importantly, the chiller room is the loudest building at Defendant, which would exasperate Plaintiff's migraine symptoms.

111. Chioffe and Onuan were well aware of this. Moreover, Plaintiff did not have a Building Automated System login, which is essential to operate chillers.

112. This act was clearly retaliatory.

113. On October 12, 2022 Chioffe gave Plaintiff a write up for missing too many days.

114. Chioffe claimed that the time missed due to Plaintiff's disability was being coupled with the disciplinary actions described above.

115. Chioffe stated that they intended to fire Plaintiff at the next chance he and Onuan got.

116. Plaintiff again complained about his health issues and FMLA not being accommodated or approved.

117. Again, Chioffe failed to acknowledge this.

118. Directly after this meeting, Plaintiff experienced a severe heart palpitation which forced him to see a cardiologist and suffer subsequent medical issues.

119. On October 28, 2022, Onuan terminated Plaintiff for missing three (3) consecutive workdays without a doctor's note.

120. Plaintiff was never made aware he needed to provide a doctor's note.

121. Plaintiff's missed days were a result of the exasperated disability conditions Plaintiff was suffering as a result of Defendant.

122. Importantly, Plaintiff feared retaliation for complaining of said discrimination. Boyle, Director of Human Resources was friends with Onuan. Additionally, several other employees, including Steven Branch, had complained of discrimination at Defendant and were terminated as a result.

123. Upon information and belief, Quinn also left Defendant just a month prior due to similar circumstances.

124. It is Plaintiff's position that he was discriminated against due to his family's race and his disability, was denied a reasonable accommodation, was denied FMLA leave and was retaliated against for requesting this accommodation and leave in violation of Title VII, the ADA and the PHRA.

**COUNT I**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

125. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

126. Plaintiff is a "qualified individual with a disability" as that term is define under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

127. Plaintiff was qualified to perform the job.

128. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

129. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

130. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

131. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

132. The purported reason for Defendant's decision is pretextual.

133. Others similarly situated but outside of Plaintiff's protected class were treated more

favorably.

134. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

135. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II
### DISABILITY DISCRIMINATION IN VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT

136. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

137. Plaintiff is a "qualified individual with a disability" as that term is define under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

138. Plaintiff was qualified to perform the job.

139. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

140. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

141. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

142. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

143. The purported reason for Defendant's decision is pretextual.

14

144. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

145. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

146. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III
## RACE DISCRIMINATIONATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

147. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

148. Plaintiff is an associated member of protected classes in that Plaintiff is a Caucasian male who is married to an African American female and has three (3) bi-racial children and one (1) African American stepchild.

149. Plaintiff was qualified to perform the job for which he was hired.

150. Plaintiff suffered adverse job actions, including, but not limited to termination.

151. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

152. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

153. Defendants discriminated against Plaintiff on the basis of race.

154. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

155. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IV
### RACE DISCRIMINATION IN VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT

156. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

157. Plaintiff is an associated member of protected classes in that Plaintiff is a Caucasian male who is married to an African American female and has three (3) bi-racial children and one (1) African American stepchild.

158. Plaintiff was qualified to perform the job for which he was hired.

159. Plaintiff suffered adverse job actions, including, but not limited to termination.

160. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

161. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

162. Defendants discriminated against Plaintiff on the basis of race.

163. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

164. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

165. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

166. Plaintiff engaged in ADA-protected activity when Plaintiff complained to Defendant about unlawful discrimination against Plaintiff based on his disability.

167. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to termination.

168. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

169. Defendant's conduct was willful or with reckless disregard of Plaintiff's statutorily protected rights under Federal law.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI
## RETALIATION IN VIOLATION OF
## THE PENNSYLVANIA HUMAN RELATIONS ACT

170. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

171. Plaintiff engaged in PHRA-protected activity when Plaintiff complained to Defendant about unlawful discrimination against Plaintiff based on his disability and family's race.

172. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to termination.

173. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VII
### **RETALIATION IN VIOLATION OF**
### **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

174. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

175. Plaintiff engaged in Title-VII-protected activity when Plaintiff complained to Defendant about unlawful discrimination against Plaintiff based on his family's race.

176. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to termination.

177. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VIII
### **VIOLATION OF FMLA – INTERFERENCE**

178. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

179. Defendant interfered with Plaintiff's right to exercise leave under the Family Medical Leave Act.

180. As a result of Defendant's interference, Plaintiff suffered damages.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IX
### **VIOLATION OF FMLA – RETALIATION**

181. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

182. Defendant retaliated against Plaintiff for exercising his rights under the FMLA.

183. Plaintiff's exercise of his rights under the FMLA caused Defendant to retaliate against him.

184. As a result of Defendant's retaliation, Plaintiff suffered damages.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sean Finley, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, FMLA, and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual

reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: November 28, 2023    By:    */s/ David M. Koller*
David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*